# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **RED RIVER UNITED, SARAH DAIGLE, KRISTA GORE, CHRISTINA LAUGHLIN, KATIE SWEETEN, AND PATRICIA STALLCUP** | **CIVIL ACTION NO.  5:21-01193** |
| | **JUDGE TERRY A. DOUGHTY** |
| **VERSUS** | |
| **CADDO PARISH SCHOOL BOARD** | **MAG. JUDGE KAYLA MCCLUSKY** |

### RULING

Pending before the Court is a Motion for Temporary Restraining Order ("TRO") filed by Plaintiffs Red River United, Sarah Daigle, Krista Gore, Christina Laughlin, Katie Sweeten, and Patricia Stallcup (collectively, the "Plaintiffs") [Doc. No. 12].  The motion is opposed. [Doc. No. 13].

Plaintiffs state that, at its regular meeting on March 23, 2021, Defendant Caddo Parish School Board ("Defendant" or "CPSB") approved a one-time supplemental pay plan (the "Pay Supplement" or "Heroes Supplement") [Doc. No. 1-2, p.17].  The stated purpose of the Pay Supplement was to award "Caddo's staff [which] has continuously gone above and beyond to support students and the community." [*Id.*]. To be eligible for the Pay Supplement, full-time employees must "have worked 90 percent of days required to be worked in the employee's job description for the 2020-2021 school year." [*Id.*].  The only exceptions to the 90-percent requirement were that workshops, professional leave days, and coronavirus leaves of absence covered under the Emergency Paid Sick Leave Act (the "EPSLA") of the Families First Coronavirus Response Act (the "FFCRA") would not count towards the 90-percent requirement.

On April 5, 2021, Plaintiffs filed the instant suit against Defendant in the First Judicial District, Caddo Parish, State of Louisiana, seeking a declaratory judgment that the Pay Supplement violated La. Const. Art. I § 3, and seeking a preliminary injunction pending declaratory judgment. Plaintiffs also asked for "all further legal and equitable relief to which Plaintiffs may be entitled." [Doc. No. 1-2, p. 16]. The citation and petition were served on Defendant on April 8, 2021. A preliminary injunction hearing was set for May 17, 2021, at 10:30 am "to show cause…why a preliminary injunction should not issue prohibiting [CPSB] from implementing the 'Heroes Supplement for School Year 2020-2021'" [Doc. No. 1-2, #30]. Before the state court could hold a preliminary injunction hearing, Defendant filed its Notice of Removal. [Doc. No. 1]. Plaintiffs have filed a motion to remand [Doc. No. 10], which is pending.

Plaintiffs contend that the Pay Supplement denies equal protection and unreasonably discriminates on the basis of sex and physical condition in violation of La. Const. Art. 1, § 3. [Doc. No.1-2, ¶ 56]. Plaintiffs assert that there is no reasonable justification for Defendant to provide leave exemptions for EPSLA absences from work but not for pregnancy/maternity leave or other non-EPSLA covered medical leaves of absence. [Doc. No. 1-2, ¶¶ 15-17, 30-33, 46-48, 54].

Plaintiffs assert that they are entitled to a TRO because the current school year ends May 28, 2021, for teachers, and the Pay Supplement provides that the bonuses will be issued as a separate check in June 2021. With the removal of this case to federal court, Plaintiffs assert that there is now an imminent threat that Defendant will implement its Pay Supplement in an attempt to moot the Plaintiffs' request for declaratory relief, unless an injunction is entered.

Under well-settled Fifth Circuit precedent, a TRO is an extraordinary remedy that should not be granted unless the movant establishes the following four elements by a preponderance of the evidence: "(1) there is a substantial likelihood of success on the merits; (2) there is a substantial

threat that irreparable injury will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) granting the preliminary injunction will not disserve the public interest." *Karaha Bodas Co. v. Perusahaan Pertambangan*, 335 F.3d 357, 363 (5th Cir. 2003).

The party moving for a TRO must carry the burden as to all four elements before a TRO may be considered. *Cf. Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

*Substantial likelihood of success on the merits*

Plaintiffs assert that this case presents a straightforward issue of discrimination and denial of equal protection under La. Const. Art. I, § 3 (hereinafter, "Section 3"). Plaintiffs state that the only relief they seek is a declaratory judgment declaring the Pay Supplement denies equal protection and is unreasonably discriminatory on the basis of sex and physical condition. [Doc. 1-2 at ⁋56.]

Plaintiffs state that, in analyzing claims under Section 3, the Louisiana Supreme Court is guided by three basic inquiries:

> The first inquiry involves identifying the challenged classification. The classification means the distinction made between one group and another or the basis on which one group is treated differently from another…
>
> The second inquiry involves identifying the person who suffers the discrimination…
>
> The third inquiry involves determining the Legislature's purpose for the classification. On this issue, the placement of the burden of proof is critical. As discussed above, the placement of the burden of proof and the determination of the appropriate level of scrutiny depends on where the challenged classification falls in the spectrum for analyzing equal protection challenges under La. Const. art. I, § 3.

*Moore v. RLCC Techs*., 95-2621 (La. 02/28/96); 668 So.2d 1135, 1141-42.

Plaintiffs contend that, under the first inquiry in *Moore*, the Heroes Supplement creates several favored and disfavored classifications: (1) Covid-19 illness absences prior to December 31, 2020 (favored) and those absent due to substantially the same or identical illness after December 31, 2020 (disfavored); (2) those who took leave for an EPSL-qualifying  physical condition or illness prior to December 31, 2020 (favored) and all other employees who at any time during the school year took a leave of absence for pregnancy or any health or medical condition (disfavored); (3) those absent prior to December 31, 2020,  due to Covid-19 circumstances such as self-quarantine while  awaiting testing, caring for another affected by Covid-19, or child care due to Covid-19 closures (favored) and those absent for substantially the same or identical reasons after December 31, 2020 (disfavored); (4) those absent from their usual place of work because of professional leave, an express exemption (favored) and those absent because of military leave or jury duty leave, for which there is no attendance exemption (disfavored).

Under the second inquiry in *Moore*, Plaintiff Red River United has asserted that its members are adversely affected by discrimination against those who contracted Covid-19 after December 31, 2020, and those who took other types of sick leave.   Plaintiffs Sarah Daigle, Krista Gore, Christina Laughlin, Katie Sweeten, and Patricia Stallcup have each alleged they have suffered discrimination based on the Pay Supplement's 90-percent attendance requirement.

Under the third inquiry in *Moore*, Plaintiffs state Defendant has failed to show how the discriminatory attendance requirements substantially furthers an important government objective under a heightened standard of review.

Defendant responds that the challenged EPSLA exceptions furthered the Congressional mandate to combat COVID-19, reduce hospitalizations and save lives. Defendant asserts that both

Congress and CPSB did not want employees who may be infected with the COVID-19 virus, or who were in recent close contact with someone with the virus, from coming to school or work because they feared that staying home might result in some loss of pay, their existing accrued leave, or their job. Thus Defendant CPSB employees were guaranteed job protected paid leave of up to 80 hours over and above any existing accrued leave available to them from CPSB, and Congress and CPSB assured them that CPSB would not discriminate against or otherwise penalize such employees because they took qualifying EPSL leave during the period April 1, 2020 through December 31, 2020. This in turn encouraged employees to take advantage of EPSLA leave without fear of future repercussions in furtherance of the public health measures needed to combat the virus (i.e., stay at home). The purpose was to prevent COVID-19 from spreading.

With regard to Plaintiffs' argument that the Heroes Supplement's EPSLA exception unreasonably discriminates against employees who must be absent for COVID-19 related reasons after December 31, 2020, Defendant states that it was Congress (not CPSB) that decided not to extend the EPSLA protections beyond December 31, 2020.

Defendant further responds that the EPSLA was an extraordinary and temporary form of leave necessitated by the COVID-19 national public health emergency at a time when no vaccinations were available - hence the word *Emergency* Paid Sick Leave. EPSLA is more akin to an emergency public health measure than a regular employee benefit. EPSLA is not equivalent to other forms of leave, such as vacation, paid time off or sick leave, which are regular employee benefits available year to year. Except for EPSLA, Defendant states that its Heroes Supplement treats all absences from work the same, regardless of the reason for the absence.

Defendant provides a list of some of the CPSB-approved leaves of absence that count against employees during the 2020-2021 school year for purposes of the 90% days worked

eligibility requirement for the Heroes Supplement: annual/vacation leave, personal leave, sick leave, sabbatical leave for medical reasons, sabbatical leave for professional/cultural improvement, extended sick leave, catastrophic leave, FMLA, maternity or adoptive leave, military leave, leave without pay, administrative leave, bereavement leave, leave to serve on state board or commissions, and public service leave. Defendant states that women are treated no differently than men on an equivalent leave status (absences for maternity leave treated the same as paternity leave, pregnancy related disability leave the same as non-pregnancy related disability leave). Those with physical or mental impairments are treated no differently than those without such impairments on an equivalent leave status. Defendant asserts there is nothing arbitrary, capricious, or unreasonable about the Heroes Supplement and its EPSLA pandemic exception.

The Court finds that Plaintiffs have not carried their burden of demonstrating a substantial likelihood of success on the merits.   There may not be a more important governmental purpose than to save lives and help reduce the burden on the healthcare system and number of hospitalizations during a worldwide pandemic. There can be no reasonable dispute that CPSB's decision to exempt EPSLA absences but not all other absences taken during the current school year up and until December 31, 2020 substantially furthers an important government objective. Defendants have shown how the attendance requirements substantially further this objective.

Furthermore, the challenged EPSLA exception furthered the Congressional mandate to combat COVID-19, reduce hospitalizations, and save lives.

As for the other referenced classifications listed in Plaintiffs' memorandum in support of the TRO that are not based on any of the enumerated grounds set forth in Louisiana's equal protection clause (workshops/professional leave, alleged favoritism to new hires), Plaintiffs bear the burden of demonstrating that these classifications do not further any appropriate governmental

6

purpose. They have failed to carry that burden.  They do not present any credible evidence other than their own speculation and conclusions as to the purported rationales.

Therefore, the Court concludes that this factor does not favor granting the TRO.

However, assuming *arguendo* that Plaintiffs have demonstrated a substantial likelihood of success on the merits, the Court will next examine whether Plaintiffs have established that immediate and irreparable harm will result in the absence of a TRO.

*Irreparable harm*

Plaintiffs assert that they will be irreparably harmed if this injunction does not issue for three reasons. First, constitutional violations are *per se* irreparable harm. Second, if an injunction does not issue, Defendant will be allowed to disburse the Pay Supplement which will necessarily moot Plaintiffs' request for a declaratory judgment. Third, because Plaintiffs are not requesting a money judgment as their ultimate relief, their injury cannot be redressed through a money judgment.

Plaintiffs state the current school year is set to end on May 28, 2021, and Defendant has made clear that it intends to release the funds in the Pay Supplement in June 2021.  Therefore, this is not a speculative injury based on unfound fear, but is instead an event which Defendant has indicated is likely to happen in June.

Plaintiffs further state that, by removing the case to federal court, Defendant appears to be playing a game of running out the clock for the purpose of mooting Plaintiffs' declaratory judgment action.   Plaintiffs conclude that the TRO should be granted to prevent Defendant from avoiding declaratory judgment by playing a delay game.

Defendant responds that there are no consequences of harm that go beyond something which cannot be rectified by money if Plaintiffs were to prevail. The challenged policy involves a

$1,000 one-time pay supplement. Plaintiffs contend that they should be eligible for the Heroes Supplement (or at least a pro rata share) for the 2020-2021 school year the same as others, and that their ineligibility for this monetary payment results in a denial of equal protection. [Doc. No. 2-1, ¶¶ 19, 21, 25-26, 28-29, 33, 40-41, 44, 48, 54]. Defendants responds that Plaintiffs' claimed injury is not irreparable because it constitutes a loss of a one-time money supplement over and above their normal wages or salary. They are still getting paid their normal wages or salary. They are being treated no differently nor receiving less than what they expected for their employment for the current school year before the board approved the one- time supplement.

The Court finds that Plaintiffs have not established that immediate and irreparable harm will result in the absence of a TRO.  "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013). To show irreparable harm, a party must demonstrate "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986) (emphases added).

The focus of this inquiry is not so much the magnitude but the irreparability of the threatened harm. The Fifth Circuit has consistently held that "an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc*., 736 F.2d 194, 202 (5th Cir. 1984)), cert. denied, 569 U.S. 994 (2013). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not

enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm." *Id*) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)).

This Court disagrees with Plaintiffs' position that irreparable harm is automatically presumed where any constitutional claims are alleged. As courts in this Circuit have explained, "[t]hat the nature of certain constitutional violations, such as violations of the freedoms of speech and privacy, is such that they necessarily cause irreparable harm does not, however, establish that any alleged constitutional violation does so." *Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. CV 05-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006); *see also, e.g., Bouchard Transp. Co. v. Dep't of Homeland Sec.*, No. 20-1116, 2020 WL 1689869, at *2 (E.D. La. Apr. 7, 2020) (similar).

Plaintiffs assert that they are not asking for a monetary award of damages, but only for a declaratory judgment. They further assert that, if the Court denies them a TRO, then their request for a declaratory judgment may become moot, once the Pay Supplement is disbursed. Plaintiffs contend that this constitutes irreparable injury.

The Court notes first, that, in addition to requesting a declaratory judgment, Plaintiffs have also asked for "all further legal and equitable relief to which Plaintiffs may be entitled." [Doc. No. 1-2]. Further, even if their request for a declaratory judgment does become moot, Plaintiffs have not shown how this necessarily constitutes a significant threat of injury to them, or why money damages or other corrective measures would not fully repair the harm.

Further, the Court notes that Plaintiffs chose to delay in seeking any emergency or preliminary injunctive relief for almost three weeks after the case was removed to federal court. The case was removed to federal court on May 5, 2021. When Plaintiffs filed their case in state

court on April 5, 2021, Plaintiffs knew that the school year ended on May 28 and they knew the one-time supplement payments were slated to be distributed in June. Any emergency that now exists and which forms the basis of the application for a TRO was caused at least in part by Plaintiffs.

Therefore, the Court finds that Plaintiffs have failed to establish that immediate and irreparable harm will result in the absence of a TRO. However, assuming *arguendo* that Plaintiffs have carried their burden up to this point, the Court will next consider the two remaining factors, the balance of the equities and the public interest, together.

### *Balance of equities and the public interest*

Plaintiffs assert that any potential harm to Defendant pales in comparison to the substantial injury to Plaintiffs. Plaintiffs state that, if injunctive relief is issued against Defendant, it will merely be prohibited from disbursing funds pursuant to its unreasonably discriminatory scheme. This is, in fact, no harm suffered at all, according to Plaintiffs, as Defendant would be in the same position as it was before approving the Pay Supplement. Conversely, Plaintiffs will suffer discrimination on the basis of physical condition or sex, in direct contravention to the Louisiana Constitution, if an injunction is not entered.

Plaintiffs further assert that an injunction to prevent the implementation of an unconstitutional policy is in the public interest. *See Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996).  Louisiana, through the enactment of La. Const. Art. I, § 3, has declared that persons shall have a right to individual dignity. This right to individual dignity specifically includes the right to be free from discrimination on the basis of sex or physical condition. Plaintiffs argue, thus, that Louisiana has declared that it has a public policy against arbitrary, capricious, or

unreasonable discrimination on the basis of sex or physical condition. Plaintiffs therefore conclude that the balance of the equities and the public interest favor the granting of the TRO.

Defendant responds that these factors weigh in favor of denying the requested TRO or preliminary injunctive relief. Defendants state that it is estimated that approximately 4,900 of the 5,400 CPSB employees (more than 90% of CPSB's total workforce) will qualify for and receive the Heroes Supplement once the school year ends May 28, 2021. Of the remaining 500 or so who may not qualify, many of these employees are individuals who simply chose not to return to work this school year out of fear of contracting COVID or not wanting to wear face coverings - - decisions that had not to do with pregnancy or maternity leave or gender or underlying physical conditions. Thus, there is only a small fraction of people that stand to benefit should the Plaintiffs ultimately prevail at trial.

The Court finds that these factors favor denying the requested TRO.  Plaintiffs state that they are not seeking a monetary award of damages.  They apparently do not want the $1,000 Pay Supplement or their pro rata share thereof. They merely seek a declaratory judgment and TRO preventing those who do want it from receiving it. It seems inequitable and against the public interest to deny the vast majority of the School Board employees, at this late date, the $1,000 Pay Supplement they have been promised.  Nobody stands to benefit from issuance of a TRO or preliminary injunction, which would preclude everyone from receiving the Heroes Supplement.

*Conclusion*

For the reasons set forth above, the Court finds that Plaintiffs' request for a TRO should be DENIED.  Should Plaintiffs still desire a hearing on their request for a preliminary injunction, they should move for a status conference to discuss a date for a hearing.

MONROE, LOUISIANA, this 25th day of May, 2021.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**